

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable F. V. Rayford
County Auditor
Rusk County
Henderson, Texas

Dear Sir:

Opinion No. O-5263
Re: Has the Commissioners' Court
of Rusk County the authority
to make a contract with J. C.
Carmichael to recover payments
due Rusk County from the Board
of County and District Road
Indebtedness on payments of
principal and interest paid
by Rusk County on road bonds?

Your letter of April 27, 1943, requesting the opinion of this department on the above stated question reads as follows:

"Enclosed herewith is a copy of a contract entered into by and between the Commissioners' Court of Rusk County and Z. O. Carmichael of Travis County.

"This contract has to do with possible credits or payments that may be due Rusk County from the Board of County & District Road Indebtedness on payments of principal and interest paid by Rusk County prior to November 13, 1941, when the Board made a part of Rusk County Road Bonds eligible for State participation.

"As we understand the matter the Board gave us a 26.02% participation on a claim of $650,605.46 spent on roads and bridges out of a 2½ million dollar road bond issue dated February 1937 and at

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable R. V. Rayford, Page 2

the time of this State aid we received a retroactive credit by the State Board that took in the 1941 maturities of $399,000.00. The date of the roads designated at that time having to do with the expenditure by the county on roads designated in 1941 as State Highways and this retroactive payment was correctly figured. The Legislation now before the Senate would as we understand it (The Road Bond Servicing Act, as amended by Homer Leonard) (see Dallas News April 22, page #4, column 5) would grant estimated payments of $120,000.00 to Liberty, Rusk, Crane and Hardin counties if the amendment and bill finally are passed.

"It is our opinion that this contract is made for the purpose of paying Mr. Carmichael 10% of the amount that Rusk County may be credited with and if the bill is finally passed as amended the only work involved would be to figure the 1940 bond maturities which would be as follows:

"$398,775.00 at 26.02% which would figure a retroactive credit due Rusk County of $103,761.25.

"In this connection I would like to state that all prior dealings with the Board of County and District Road Indebtedness with regard to State participation in Rusk County bond issues have been handled through this office without any additional expense to the county of Rusk and I further wish to state that at all times we have had the cordial advice, help and assistance from the State Board and from the Chief Accountant of the Board and we believe that Rusk County has received full credits under the laws of the Road Bond Servicing Act.

"Never the less we cannot see how the Commissioners' Court of this County or any county has the power and authority to make such agreements and I want your opinion if this can be legally paid under said contract herewith submitted."

A copy of the contract referred to in your letter and attached thereto reads as follows:

Honorable R. V. Hayford, Page 3

"THE STATE OF TEXAS :

COUNTY OF RUSK :

"THIS AGREEMENT, made and entered into on this the 26th day of April 1943, by and between J. O. Carmichael of Travis County, Texas, and the Commissioners' Court of Rusk County, Texas.

"WITNESSETH:

1.

"WHEREAS, there is a possibility that Rusk County is not enjoying the maximum participation and benefit to which it may be entitled under the Bond Assumption Law, and that the County might have a claim against the Board for participation in the bond assumption fund on bonds which have been paid by the county but not assumed by the Board, especially with reference to those bonds on which the County has already paid the amounts maturing prior to the acceptance of certain roads by the State Highway Commission for maintenance purposes; and there is a possibility that through law, court action, or corrective legislation, that these bonds might be declared eligible by the Board so that Rusk County might receive reimbursement for payments made by the County prior to November 13, 1941, the date when the Bond Board began participation and payment on said bonds;

"WHEREAS, before it can be determined whether such a possibility does exist, it is necessary that a comprehensive survey and thorough check be made of all expenditures from bond funds expended on State Highways within Rusk County. It is also necessary to determine if all legal interpretations and Attorneys' General Rulings have been properly considered in arriving at the state participation allowed Rusk County.

"It is recognized that to properly survey all the original expenditures from bond funds and to properly assemble and compile such data and proofs

Honorable R. V. Rayford, Page 4

that may be necessary to present any favorable findings to the Board of County and District Road Indebtedness for final consideration and approval, requires the services of one thoroughly experienced in such matters.

"THEREFORE, Rusk County has employed and does hereby employ J. O. Carmichael for the purpose of making such survey of bond fund expenditures for highway purposes, and to assemble such information and other evidence of proof necessary to properly present and substantiate any claim for reimbursement and cash refund to which Rusk County may be entitled, either by action before the Board under the present law or any amendment thereto, or by court action thereunder.

"J. O. Carmichael agrees to do all of the necessary things outlined above, furnishing a skilled accountant or accountants to assist him if it is deemed necessary, to make the survey and to properly perform any other services as may be required in an effort to secure such reimbursement and cash refunds, and to pay all expenses incurred in connection therewith.

2.

"For and in consideration of the services to be rendered hereunder as attorney and accountant, Rusk County agrees to pay J. O. Carmichael, a sum equal to 10% of the net recovery obtained for Rusk County by way of reimbursement or refunds which might be made by the Board for payments of principal and interest heretofore made by Rusk County, on which the State has not heretofore participated and is not now participating. This contract shall not cover any future participation by the Bond Board or any present participation in other bonds, but only the principal and interest which matured prior to the date of assumption of payments by the Board, and which the County has already paid.

"Such fee shall be due and payable only upon the actual reimbursement or refund of such money to the County or to the credit of the County in

the County or State Treasury, whether by lump sum
payment in cash or by extended annual payments or
credits to the County.

"In the event the said J. O. Carmichael is
unsuccessful and no refund or reimbursement is
made to Rusk County under this contract, then Rusk
County shall not be indebted to said party for
services rendered or expenses incurred, and if no
recovery is obtained by December 31, 1943, this
contract shall automatically terminate and be null
and void.

J. O. Carmichael

RUSK COUNTY, TEXAS
BY R. M. Leath, County
    Judge

ATTEST:
Hubert Hudson, Co. Clk.
By H. Fite, Dep.

| Commissioner, Precinct No. 1 | Frank Matlock Commissioner, Precinct No. 3 |
|---|---|
| Commissioner, Precinct No. 2 | W. B. Perry Commissioner, Precinct No. 4" |

As we understand your request you desire our opin-
ion concerning the legality of the contract in question.

Generally speaking the authority of the Commission-
ers' Court as the governing body of the county to make con-
tracts in its behalf is strictly limited to that conferred
either expressly or by fair or necessary implication by the
Constitution and laws of the State. The wisdom of the con-
tract is not a matter into which a judicial tribunal will
inquire; and the court will not substitute its judgment for
that of the Commissioners' Court so long as the latter con-
tracts under the authority of law. (See the cases of Roper
v. Hall, 280 S. W. 289; Broussard v. Wilson, 183 S. W. 814;
Tex. Jur., Vol. 11, p. 632).

Honorable R. V. Rayford, Page 6

After carefully considering the contract, heretofore mentioned, it is apparent that Rusk County through its Commissioners' Court raises a question presenting that there is a possibility that Rusk County is not enjoying the maximum participation and benefit to which it may be entitled under the Bond Assumption Law, and that the county might have a claim against the Board for participation in the Bond Assumption Fund on bonds which have been paid by the county but not assumed by the Board, especially with reference to those bonds on which the county has already paid the amounts maturing prior to the acceptance of certain roads by the State Highway Commission for maintenance purposes; and there is a possibility that through law, court action or corrective legislation, that these bonds might be declared eligible by the Board so that Rusk County might receive reimbursement for payments made by the county prior to November 13, 1941, the date when the Board began participation and payment on said bonds.

Article 6674q-7, Vernon's Annotated Civil Statutes provides that the Board of County and District Road Indebtedness shall consist of the State Highway Engineer, State Comptroller of Public Accounts and the State Treasurer. The Board is charged with the duties of administering the act. One of the duties of the Board is to ascertain and determine from the data and information furnished by the county judges of the State and by the Chairman of the State Highway Commission and by the State Comptroller of Public Accounts, and from such further investigation that said Board may deem necessary, the amount of indebtedness eligible under the provisions of this section of this act (Article 6674q-7) to participate in the moneys coming into said county and road district highway fund. This provision of the statute further provides

"The ascertainment and determination by the Board of County and District Road Indebtedness, after reasonable notice and hearing, of the amount of any county or defined road district obligations eligible under the provisions of this act to participate in any moneys coming into the county and road district highway fund, or as to the amount of any obligations the proceeds of which were actually expended on state highways or on roads heretofore constituting state highways, shall be final and conclusive and shall not be subject to review

Honorable R. V. Rayford, Page 7

in any other tribunal.  But said Board of County
and District Road Indebtedness shall have the
right at any time to correct any errors or mistakes
it may have made."

Paragraph (n) of Article 6674q-7 provides:

"The Board shall keep adequate minutes of
its proceedings and semiannually, within thirty
(30) days after February 28th and August 31st,
of each year, shall make itemized reports to each
county with respect to the receipt, disbursement,
and investment  of the funds credited to such
county.  The Commissioners Court of any county,
and/or its accredited representatives shall have
the right to inspect the records of said Board
and of the State Treasurer, at any reasonable time
for the purpose of making any investigation or
audit of the accounts affecting its county."

Under the terms of the contract, Rusk County em-
ployed the party named therein as attorney and accountant
"for the purpose of making such survey of bond fund expendi-
tures for highway purposes, and to assemble such information
and other evidence of proof necessary to properly present
and substantiate any claim for reimbursement and cash refund
to which Rusk County may be entitled, either by action before
the Board under the present law or any amendment thereto, or
by court action thereunder."

The party contracting with Rusk County "agrees to
do all of the necessary things outlined above, furnishing
a skilled accountant or accountants to assist him if it is
deemed necessary, to make the survey and to properly perform
any other services as may be required in an effort to secure
such reimbursement and cash refunds, and to pay all expenses
incurred in connection therewith".

It is well established in this State and has been
consistently held by this department that a county has the
right to employ an attorney to perform certain duties where
such duties are not required to be performed by the county
or district attorney in his official capacity.

In view of the foregoing it is the opinion of this
department that the foregoing contract is a legal one which
the Commissioners' Court has the authority to make and execute.

In connection with the foregoing we want to point out that the Commissioners' Court is not authorized to pay the compensation provided in said contract out of the Lateral Road Account in view of the provisions of Article 6674q-7 and Article 6674q-80, Vernon's Annotated Civil Statutes. Such compensation must be paid out of the general fund of the county and paid in accordance with the county budget providing for such. All county expenditures lawfully authorized to be made by a county must be paid out of the county's general fund unless there is some law which makes them a charge against a special fund. (Williams v. Carroll, 182 S. W. 29, Carroll v. Williams, 202 S. W. 504; Bexar County et al. v. Mann, 157 S. W. (2) 134).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:mp

APPROVED MAY 10, 1949

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS